THE STATE OF OHIO, APPELLEE, *v.* TOLLIVER, APPELLANT.

(No. 46277—Decided March 26, 1984.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Hyman Friedman,* public defender, and *Ms. Marillyn Fagan Damelio,* for appellant.

ANN MCMANAMON, J. At 1:30 a.m. on April 16, 1982 Cleveland Police responded to a radio message that a man was making threats with a gun at "Playland," a show bar at East 55th and Euclid Avenue. Upon arrival, the officers were directed to two individuals heading toward the exit. Charles Tolliver, the appellant, was one of them.

Tolliver was arrested for disorderly conduct and resisting arrest.[1] During routine booking procedures at the Fifth District police station five packets of cocaine were found in the lining of a jacket which police said belonged to appellant. Tolliver was then charged with one count of possession of cocaine in less than the bulk amount (R.C. 2925.11). He was found guilty by a jury and sentenced to two to five years' imprisonment.

It is from this conviction that appellant appeals, raising two assignments of error.

I

"The prosecutor's improper impeachment of a defense witness's testimony deprived the appellant [*sic*] a fair trial as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I § 10 of the Ohio Constitution."

Tolliver's defense to the cocaine charge was based upon evidence that the jacket which contained contraband was not worn by appellant and did not belong to him. His principal defense witness was Leketa Cockwell, a "Playland" entertainer, who stated that appellant was known to her as a regular customer at the bar. Cockwell told the jury that she had seen appellant in the audience on the evening in question, while she was performing her fire-eating act. She watched him leave the bar with a police officer in pursuit and later saw him outside after he was apprehended. The witness testified that subsequent to ap-

---

[1] The officers did not locate a gun.

pellant's arrest "a young lady" took Tolliver a brown leather jacket, size 40 long, which allegedly belonged to a three hundred pound man known as "Fats."[2]

Cockwell identified a long brown overcoat, defense Exhibit A, as Tolliver's. She stated that she saw it in the bar after Tolliver's arrest and that she took it home at appellant's request.

Michelle Tolliver, defendant's cousin and a friend of Cockwell's for about ten months, was called to corroborate this testimony. On cross-examination the prosecutor raised the following questions concerning Leketa Cockwell:

"Q. Did you know Leketa before when she was a man?

"MR. KWARCIANY: Objection, your honor.

"THE COURT. The objection will be sustained.

"* * *

"Q. Do you know if Leketa was a man before —

"MR. KWARCIANY: Objection.

"THE COURT: Overruled. You may answer.

"A. Yes.

"Q. She was a man before?

"A. Uh-huh.

"Q. So do you know her as a woman or man?

"A. As a woman."

In continuing cross-examination of the witness the prosecutor mixed his pronouns, but ultimately referred to Cockwell as "it" or "whatever":

"Q. When you came back to pick up Leketa, what time did you come to pick her up?

"A. Closing time. Maybe quarter to two, something like that.

"Q. Okay. Quarter to two. At that time you say she had the coat. I am confusing his and her.

"MR. KWARCIANY: Objection, your Honor.

"THE COURT: Overruled.

"Q. It or whatever.

"MR. KWARCIANY: Objection, your Honor.

"THE COURT: Sustained as to that.

"Q. Leketa had the coat in its possession, is that correct?

"A. No."

In his final remarks to the jury the prosecutor alluded to Cockwell's last name and directly attacked the witness' credibility on the basis of a suggestion as to her sexual identity:

"We have only one side. The witness for the defense, Leketa Cockwell, I am not trying to be rude or gross, that the last name is Cockwell. But here is a person who comes here in court and swears under oath, and somebody who swore under oath is lying. Here comes a person who comes under oath, and again, I don't care whether it is a man or woman or whatever, he comes here representing to you that he is a woman. I asked him or her, it, or whatever, are you Miss or Mrs.? He tells you Mrs. Cockwell. Is that the truth? Is that possible that that is a Mrs.? [sic.]

"Then she tells you or it tells you that it is a performer at the bar, is a fire eater, and while performing she has seen everyone who is coming in, of course, and who is wearing what coat."

Appellant argues that he was prejudiced by these improper references to Cockwell's name and gender.

Evid. R. 608 restricts the use of evidence regarding a witness' character and specific instances of conduct for the purpose of impeachment:

"(A) Opinion and reputation evidence of character. The credibility of a

---

[2] Appellant, a six foot tall individual, testified that in March, one month before the incident, he weighed two hundred eleven pounds and that in April he wore a size 44; he further stated that at the time of trial, in September, he weighed one hundred eighty pounds and fit a size 42 regular.

witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(B) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. * * *"

Only matters which are relevant to truth and veracity, and not to a witness' general moral character, are the proper subject of cross-examination. *State* v. *Scott* (1980), 61 Ohio St. 2d 155 [15 O.O.3d 182]; *State* v. *Moyer* (March 4, 1982), Cuyahoga App. No. 43748, unreported. Particular facts which tend to discredit the reputation of a person who is sought to be impeached in other respects than as to his reputation for truth and veracity are inadmissible. 4 Jones on Evidence (6 Ed. 1972), Section 26:18.

In *Hall* v. *State* (1976), 167 Ind. App. 604, 339 N.E. 2d 802, an Indiana Court of Appeals upheld a motion *in limine* which prohibited cross-examination of a witness on his alleged homosexuality. The court stated at 611, 339 N.E.2d at 806:

"We are at a loss to understand how Mr. Hooe's [the witness] being a homosexual would affect his credibility in the case before us. Hall has not shown how Mr. Hooe's being a homosexual could or would have shown an interest, bias, prejudice or motive on his part."

It further recognized that any question regarding homosexuality "would have been for the sole purpose of prejudicing the jury and discrediting Hooe because of his different lifestyle." *Id.* at 612, 339 N.E.2d at 807.

Likewise, in *People* v. *Whalen* (1973), 390 Mich. 672, 213 N.W. 2d 116, the Supreme Court of Michigan reversed and remanded defendant's convictions of breaking and entering and larceny where the prosecutor questioned defense witnesses regarding a lesbian relationship. The court stated at 686, 213 N.W.2d at 123-124:

"The cross-examination by the prosecutor in this case also had no legal connection with the question being tried, and the end to which it was obviously directed was utterly indefensible and resulted in an unfair trial. It even went far beyond the improprieties censured by this Court in [*People* v.] *Tolewitzke, supra* [(1952), 332 Mich. 455]. It did no more than put in front of the jury the fact that he, the prosecutor, *personally* felt these witnesses to be of disreputable character and unworthy of belief. The prejudicial effect of such remarks by, as we have noted above in [*People* v.] *Cahoon, supra,* [(1891), 88 Mich. 456], a *quasi*-judicial officer is obvious."

We find the prosecutor's inquiries concerning the witness' alleged sexual transformation, and the injection of his personal opinions concerning the character of Leketa Cockwell, as well as his disparagement of her surname, to be egregious. The questions and complained-of comments were in no way probative of the witness' veracity and could only serve to inflame the jurors against Tolliver's key defense witness and the corroborating witness who was her friend.

The prejudice to appellant is obvious and necessitates a new trial.

This assignment of error is well-taken.

## II

In his second assignment of error appellant contends:

"The trial court erred by [A.] sustaining prosecutorial objections to appellant's admissible testimony and [B.] by giving the appearance of disbelieving appellant's testimony at trial, thereby denying appellant his right to testify as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I § 10 of the Ohio Constitution."

Appellant testified at trial. On direct examination he attempted to present evidence that the police had beaten him during the process of his arrest. In the instances cited, the prosecutor raised objections to the testimony and the court sustained the objections, ordering that the answers be stricken and that they be disregarded by the jury.

Appellant argues that the stricken testimony constituted evidence of his beating which was offered to show that the officers were inattentive to appellant's protests that he had been given the wrong jacket.

Evid. R. 401 defines "relevant evidence" as:

"* * * [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

We find that the testimony concerning police activity during the time the coat was allegedly put into appellant's possession was relevant to his defense.

However, we find that any error in excluding it was harmless under State v. Eubank (1979), 60 Ohio St. 2d 183 [14 O.O.3d 416]. Appellant was permitted to introduce ample evidence of the alleged police beatings without objection. He testified that Officer Rajic, the arresting policeman, "threatened my life"; that the officers assaulted him in the course of attempting to subdue him; that he was "already beaten up" when he protested that the coat given to him was not his; and that appellant was assaulted a second time during the booking procedure.

We find no merit in appellant's argument that any of the court's rulings, although some were erroneous, indicated the court's view of the case. The record does not reflect any assessment by the court as to the credibility of the witnesses.

This assignment of error is not well-taken.

Reversed and remanded.

*Judgment reversed and*
*cause remanded.*

CORRIGAN, P.J., concurs.

NAHRA, J., dissents in part.

NAHRA, J., dissenting in part. I respectfully dissent in part from the majority's disposition of appellant's first assignment of error. The permitted cross-examination of Michelle Tolliver regarding Ms. Cockwell's sexual identity was error, but I believe such error to be harmless.

Any error which does not affect substantial rights is harmless error and will be disregarded. Crim. R. 52(A). In order to determine whether a non-constitutional error has affected the accused's substantial rights, a "reviewing court must read the record, disregarding the objectionable material, and then determine whether or not there was 'substantial' evidence of the appellant's guilt before it affirms or reverses the judgment of the trial court." State v. Davis (1975), 44 Ohio App. 2d 335 [73 O.O.2d 395], paragraph three of the

syllabus. If substantial evidence exists, the conviction should be affirmed. *Id.* at 347. Even applying the more exacting test for constitutional errors, see *United States* v. *Hasting* (1983), ____ U.S. ____, 76 L.Ed.2d 96; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, paragraphs three and six of the syllabus, I would find the error harmless.

Absent the prosecutor's remarks, which were not objected to in closing argument, and the prosecutor's improper cross-examination, there was sufficient contradicting testimony and evidence by the appellant himself which put Cockwell's testimony and thus credibility in issue. Cockwell testified that appellant visited the Playland Bar every day. Appellant's testimony was otherwise. Cockwell testified that state's Exhibit 1, the size 40 long waist jacket, was worn by a person known as "Fats," who weighed about three hundred pounds. When appellant tried the jacket on at trial, appellant testified it was tight-fitting. Appellant weighed less than two hundred eleven pounds at trial. Appellant then stated he did not know whether someone weighing three hundred pounds could have worn the jacket, as Cockwell testified.

Further, there was sufficient evidence of appellant's guilt to render the error harmless. Officers Rajic and Rejets testified that appellant was wearing the jacket when they first approached him, and when he was arrested, up until the time he was booked. Rajic did not see anyone throw anything into the squad car to appellant, and Rejets could not recall anyone throwing a jacket into the squad car. Rejets testified that at the booking station appellant would not voluntarily remove his jacket and that it had to be removed. Lieutenant Hassell corroborated this testimony. After viewing the entire record, including the above testimony, I would find that there is substantial evidence of guilt to affirm appellant's

conviction and that the improper attack on the credibility of Cockwell did not prejudice appellant's trial.