OPINION
Defendant-appellant, Adrian Sealey, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of murder with specifications in violation of R.C. 2903.02, and three counts of felonious assault with specifications in violation of R.C. 2903.11.
According to the state's testimony, on November 13, 1998, Karrie Spencer was assaulted. Karrie reported the assault to Khalief Vaughn, Mustafa Vaughn, Dejuan Groce, Khalief's best friend, and Kourtney Spender, Karrie's brother. Karrie did not know who assaulted him, but said some men at the viaduct, a neighborhood off Cleveland Avenue, had done it. Karrie heard only the name "Mouse" when he was assaulted.
Mustafa testified that Mouse was his good friend, and that their families were good friends. Khalief, Mustafa, and their friends decided to walk to the viaduct to talk to Mouse about the assault on Karrie. Although Mouse was not there, Joe Monroe and defendant were standing in the doorways of the apartments at 804 and 806 Leona Avenue. Khalief and Monroe exchanged words, arguing with each other, and then Khalief started to walk away along with the rest of the group. Monroe started shooting. Defendant struggled to get his gun, and also began shooting at Khalief. Mustafa ran into an alley until the shots stopped. He returned to find his brother lying on the ground dead.
Defendant was indicted on one count of murder and three counts of felonious assault, all with specifications. A jury trial resulted in a verdict finding defendant guilty of all counts. Defendant appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN ADMITTING, OVER OBJECTIONS, IRRELEVANT EVIDENCE OF GENERAL DRUG ACTIVITY.
 II. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE, AS A RESULT OF PROSECUTORIAL MISCONDUCT IN THE STATE'S OPENING AND CLOSING STATEMENTS TO THE JURY.
 III. THE JURY'S VERDICT OF GUILTY TO THE OFFENSE OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THEREFORE, AN ERROR AS A MATTER OF LAW.
Relying on Evid.R. 402 and 404(B), defendant's first assignment of error contends the trial court erred in admitting irrelevant evidence of drug activity.
"The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby [an appellate] court should be slow to interfere." State v. Maurer (1984), 15 Ohio St.3d 239,265, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128.
Pursuant to Evid.R. 402, evidence that is not relevant is not admissible. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Cleveland v. Hill (1989), 63 Ohio App.3d 194, 197, citingState v. Tolliver (1984), 16 Ohio App.3d 120.
Brian Keefe, a police officer, was allowed to testify over objection that he observed drug paraphernalia in apartments 804 and 806 Leona Avenue, including crack pipes and roach clips. Keefe also testified not only that he had made arrests outside of those apartments for drug activity, but that large volumes of people traffic inside and out of them. Defendant contends the state provided no link between the general drug activity and the circumstances of the homicide.
The state offered no evidence to suggest the murder of Khalief was drug-related. The fact that the officer made previous drug arrests outside the premises or that he had previously seen drug paraphernalia on the premises, did not make it any more or less probable that defendant shot at the victim. See State v. Mardis (1999), 134 Ohio App.3d 6
(holding that evidence of defendant's prior drug transactions had no relevant relationship to the murder of the victim, where the evidence did not suggest that the argument between the defendant and the victim was related to the use or sale of drugs).
Moreover, Evid.R. 404(B) prohibits admission of evidence of other crimes, wrongs, or acts to prove a defendant's criminal propensity to commit the crime in question. However, "other acts" evidence is admissible if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Bey (1999), 85 Ohio St.3d 487,490, citing State v. Lowe (1994), 69 Ohio St.3d 527, 530. The state contends the testimony does not constitute "other acts" evidence as the officer does not personally implicate defendant in drug activity at 804 or 806 Leona Avenue. While the state's contention may be correct, it suggests the evidence is irrelevant.
The state next asserts the evidence was offered for the limited purpose of showing this was not the "Norman Rockwell" home that defendant portrayed it to be through the testimony defendant elicited from Officer Keefe, who described the apartments as places where people sleep and children play. Contending defendant opened the door to the state's evidence about drug activity, the state asserts the trial court properly allowed it to correct the impression defendant created through the testimony of Keefe. Even if defendant's purpose in eliciting the testimony from Keefe was narrow, the trial court arguably (1) did not abuse its discretion in construing the testimony, as the state has portrayed it, and (2) thus did not err in allowing the state to introduce evidence of the drug activity. Nonetheless, even if the evidence was improperly allowed, defendant suffered no prejudice, given the state's evidence.
Defendant, however, asserts the internal inconsistency in the state's evidence demonstrates the absence of overwhelming evidence of guilt. Although one of the state's witnesses, Jamie Jamison, presented conflicting testimony, the undisputed evidence demonstrates defendant shot a gun at the group of men who had come to the area. Moreover, Mustafa and Groce both testified that defendant shot at Khalief and then fired at the other group members, apparently to keep them away from Khalief. The physical evidence collected revealed sixteen shell casings found in the surrounding areas. Eleven shell casings were identified from Monroe's gun, which also matched the two bullets removed from the victim's body. Although defendant's gun was not found, five of the shell casings found were not fired from Monroe's weapon, but all five were fired from the same weapon.
Given that the bullets removed from the victim's body were not fired from defendant's gun, defendant also asserts not only did he not murder Khalief, but there is no clear-cut evidence defendant acted in concert with Monroe. While defendant's argument is addressed more fully in defendant's third assignment of error, we note the state presented ample evidence to establish defendant aided Monroe. Specifically, Mustafa testified defendant caused Khalief to return to the scene, allowing Monroe to start firing at Khalief; subsequently, defendant also fired at Khalief. In addition, the state presented evidence that defendant was shooting at the others in an effort to keep the group away from the victim. Thus, the evidence established defendant acted in concert with Monroe.
Defendant further contends the evidence was not overwhelming because it establishes he acted in self-defense, as Mustafa testified defendant only returned fire after Jamison tried to shoot him first. While Mustafa clearly testified defendant fired shots at Khalief and then the group after Jamison shot at him, the evidence also reveals that defendant fired first at Khalief, Jamison returned fire, and then defendant turned his efforts toward the group. Thus, defendant's first assignment of error is overruled.
Defendant's second assignment of error asserts he was denied a fair trial under the due process clause because of prosecutorial misconduct in the state's opening and closing remarks.
"The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused. * * * '[T]he prosecution is entitled to a certain degree of latitude in summation * * *.'" State v. Lott (1990), 51 Ohio St.3d 160,165, quoting State v. Liberatore (1982), 69 Ohio St.2d 583, 589. Indeed, "'[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" Lott, supra,
quoting State v. Stephens (1970), 24 Ohio St.2d 76, 82. Nonetheless, prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence. Lott at 166.
Defendant first challenges the following two statements in conjunction: "Ladies and gentlemen, on November 13th of last year, Columbus claimed its 68th homicide of the year." (Tr. 37.) "It was reported that night on the news and probably forgotten by most by next week when Columbus had its 69th homicide." (Tr. 41.) Defendant did not object to the statements; thus all but plain error is waived. In order to demonstrate plain error, defendant must establish that the outcome of his trial clearly would have been different, but for the alleged error. Statev. Lewis (July 21, 1998), Franklin App. No. 97APA09-1263, unreported, citing State v. Waddell (1996), 75 Ohio St.3d 163. Even if the remarks were improper, defendant has not demonstrated that the outcome of his trial clearly would have been different, given the above-noted evidence against defendant.
Defendant next challenges the prosecution's reference to defendant as a gang member. Defendant objected to the reference, but the state contends the gang-related reference was needed to provide "background" information to the jury. The objection was overruled. Accordingly, the prosecution continued by stating "[t]hese two men, Mr. Monroe, Mr. Sealey, were known in the neighborhood to be members of a group, a gang, called the viaduct dudes." (Tr. 40-41.)
Background information is admissible to give the jury the setting of the case. State v. Hurt (Mar. 29, 1996), Franklin App. No. 95APA06-786, unreported, citing State v. Wilkinson (1980), 64 Ohio St.2d 308, 317. Under Evid.R. 404(B), however, defendant's membership in a gang is inadmissible to prove that defendant had a propensity to commit crime.State v. Robb (2000), 88 Ohio St.3d 59, 69.
The evidence here established that Karrie was beaten earlier that day by some men at the viaduct. The victim, his brother, and their friends went to the viaduct to ask "Mouse" about the incident with Karrie. Although the group went to the area knowing the "viaduct gang" was there and defendant was a member of that gang, the state did not allege or prove that the assault of Khalief was gang-related. Thus, the gang affiliation statements arguably were improper: defendant's membership in the "gang" did not establish motive or any other permissible purpose under Evid.R. 404(B) regarding defendant's participation in the murder of Khalief. See Robb, supra.
However, even if error, the gang affiliation statements were not prejudicial to defendant. As noted previously, both Mustafa and Groce testified that defendant shot at Khalief and the remaining members of the group. See State v. Justice (Nov. 15, 1991), Lucas App. No. L-90-341, unreported (finding no prejudice in the admission of testimony that appellant belonged to a gang because two witnesses clearly testified to appellant's actions establishing guilt).
Finally, defendant challenges the prosecution's statement in rebuttal argument that "[y]ou heard evidence of crack pipes and drug paraphernalia being found repeatedly in these two homes." (Tr. 402.) As noted in discussing defendant's first assignment of error, even if the evidence was improperly admitted, defendant was not prejudiced due to substantial evidence of defendant's guilt noted above. Accordingly, defendant's second assignment of error is overruled.
Defendant's third assignment of error contends his murder conviction is against the manifest weight of the evidence. Defendant asserts Monroe killed the victim, and no evidence was presented indicating Monroe and defendant acted in concert with one another. The trial court instructed the jury that defendant could be convicted of murder as an "aider and abettor" or "complicitor" who acted with the purpose of causing the death of Khalief, if the evidence demonstrated defendant aided or abetted Monroe in committing the offense of murder.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins
(1997), 78 Ohio St.3d 380 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
Under R.C. 2923.03, no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: "* * * (2) Aid or abet another in committing the offense[.]" Mustafa testified that Khalief was walking away from Monroe and defendant when "Peewee [defendant] mentioned something real loud, but my brother [Khalief] didn't catch it, so my brother turned around and said, `what you say?' walked up the street a little bit, and I heard, you know what I'm saying, exchanges of words, arguing. That's when I seen Joe — my brother was turning around — seen Joe Monroe pull his gun and start shooting." (Tr. 131.)
Mustafa's testimony, coupled with the evidence of defendant's shooting at the victim and the other members of the group, apparently in an effort to keep the group away from Khalief, supports defendant's conviction as an aider and abettor. See State v. McCoy (June 22, 2000), Franklin App. No. 99AP-969, unreported (where the court held defendant's felonious assault conviction was not against the manifest weight of the evidence because "[e]ven though the evidence does not conclusively show that appellant struck Carolyn," the evidence does show that appellant "aided and abetted" the other two attackers in the assault of Carolyn).
Defendant nonetheless contends the evidence does not suggest prior planning or a concerted action between Monroe and defendant to kill the victim. Defendant asserts that his later joining in the shooting is not evidence of complicity because Monroe started the shooting and ultimately killed the victim. Indeed, defendant claims he did not fire his weapon until Jamison shot at him, and strong evidence indicates defendant did not even shoot at the victim. Mustafa, however, testified defendant shot at the victim prior to Jamison's shooting at defendant, and he further testified defendant shot at the rest of the group after Jamison shot at defendant. Similarly, Groce testified defendant shot at the victim and then at the group. Regardless of any inconsistency in Jamison's testimony, both Mustafa and Groce testified defendant shot at the victim and the other members of the group. Moreover, the jury could conclude their testimony was corroborated, in part, by evidence that the five shell casings not fired from Monroe's gun were determined to have been fired from the same gun, coupled with the evidence that defendant and Monroe were the only ones to have fired multiple shots. Thus, the conviction was not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.
Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
DESHLER and KENNEDY, JJ., concur.