[Cite as *State v. Wilson*, 2019-Ohio-4056.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                          No. 107806

    v.                           :

MORALES WILSON,                         :

    Defendant-Appellant.         :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 3, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-01-404711-ZA

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl J. Mazzone, Assistant Prosecuting Attorney, *for appellee.*

Richard E. Hackerd, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Morales Wilson ("Wilson") appeals from his conviction and sentence for sexual battery and kidnapping. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} On March 26, 2001, the Cuyahoga County Grand Jury indicted Wilson on two counts of rape in violation of R.C. 2907.02, one count of kidnapping in violation of R.C. 2905.01, and one count of gross sexual imposition in violation of R.C. 2907.05. The indictment was the result of an incident that took place in November 2000.

{¶ 3} At that time, the victim was 17 years old, and lived with her mother, her stepfather, and her brother on East 113th Street in Cleveland, Ohio. Her stepfather's brother, Wilson, was staying with them temporarily.

{¶ 4} The victim's fiancé lived around the corner from her. One evening in early November 2000, T.A. and her fiancé had gotten into an argument over the phone, and she decided to sneak out of the house and go to his house to try to resolve the argument.

{¶ 5} T.A. and Wilson both testified at trial and gave differing accounts of the incident. That evening, Wilson was staying on the living room couch. T.A. testified that when she came downstairs from her bedroom to go to her fiancé's house, Wilson stopped her and asked her what she was doing. According to T.A., Wilson told her that her mom would not like her sneaking out of the house, and "basically said if you let me touch you, then I will — I won't tell your mom that you're going to sneak out of the house." Wilson then proceeded to put his hands down T.A.'s pants, suck on her breast, take off her pants, initiate sexual intercourse, and

ejaculate on her stomach.  T.A. testified that Wilson used a tissue to clean up before she got dressed and left the house for the night.

{¶ 6}    Wilson testified that he and T.A. had consensual sex.  He testified that on a previous occasion, T.A. had come downstairs and sat beside him on the couch and began asking him a lot of questions.  According to Wilson, T.A. offered him oral sex and when he asked her how old she was, she said that she was 17.  Wilson testified that when she tried to initiate sexual contact, he stopped her.  According to Wilson, on the night of the incident in question, he woke up on the couch to T.A. rubbing his face, and they proceeded to have sexual intercourse on a chair in the same room.

{¶ 7}    The following day, T.A. and her fiancé returned to her house and told her mother what had happened.  When the family confronted Wilson, he grabbed his belongings and left the house.  Wilson ultimately left Cleveland and was living in Brooklyn, New York.  In 2017, Wilson was arrested in New York and transported to Ohio on an outstanding warrant in this case.

{¶ 8}    A jury trial began on August 7, 2018.  At trial, the state called T.A., the nurse who examined T.A. following the incident, the responding police officer, the victim's brother, a DNA forensic scientist, and a detective who worked on the case. Following the state's case, Wilson made a Crim.R. 29 motion.  The court denied this motion.  Wilson then testified on his own behalf.  Wilson renewed his Crim.R. 29 motion, and the court again denied the motion.

{¶ 9} The jury returned a verdict of not guilty on both counts of rape; guilty on two counts of sexual battery as a lesser included offense on both rape counts; guilty on one count of kidnapping; not guilty on one count of gross sexual imposition; and guilty on one count of sexual battery as a lesser included offense to the gross sexual imposition count.

{¶ 10} On August 29, 2018, Wilson filed a motion for a new trial. On September 11, 2018, the state filed a motion to dismiss Count 4, gross sexual imposition, because sexual battery is not a lesser included offense of gross sexual imposition. On September 18, 2018, the court granted this motion. The state and Wilson agreed that the kidnapping and sexual battery offenses merged for sentencing, and the court proceeded to sentence Wilson on the sexual battery convictions. The court sentenced Wilson to three years in prison on each sexual battery offense, to be served concurrently.

{¶ 11} Wilson appeals, presenting five assignments of error for our review.

**Law and Analysis**

**I. Development of Factual and Legal Defense Theories**

{¶ 12} In his first assignment of error, Wilson argues that the trial court abused its discretion and denied him due process by restricting his development of factual and legal theories. In support of his argument, Wilson points to four specific instances: the trial court sustained an objection to defense counsel's extensive voir dire questioning regarding prospective jurors' opinions on relationships between individuals with a significant age difference; the trial court made a comment

characterizing a statement made by the victim as "what actually happened"; the trial court sustained an objection while defense counsel was attempting to impeach the victim using a prior inconsistent statement; and the trial court sustained an objection after defense counsel asked the victim how many times she had met with the prosecutor.

{¶ 13} "'The manner in which voir dire is to be conducted lies within the sound discretion of the trial judge.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 72, quoting *State v. Lorraine*, 66 Ohio St.3d 414, 418, 613 N.E.2d 212 (1993). This discretion extends to determining what questions should be asked on voir dire. *Thompson*, citing *Mu'Min v. Virginia*, 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} We do not find that the trial court abused its discretion in limiting defense counsel's questioning on voir dire to matters relevant to the instant case. Defense counsel extensively questioned prospective jurors regarding their opinions, if any, on a sexual relationship between a 17-year-old and a 29-year-old. A review of the record shows that as this line of questioning went on, several of the jurors provided responses that referred to the legal age of consent. Not only were these responses not entirely compatible with Ohio law, they were indicative of confusion on the part of prospective jurors because the age of the parties involved here was not

a legal issue in this case. The state objected and requested a sidebar. During the discussion at sidebar, the state expressed concern that the jurors were beginning to get confused about the offense with which Wilson was charged, and were being indoctrinated with the idea that Wilson and the victim were in a relationship. The court responded as follows:

> So I'm going to sustain the objection because you're going far afield to the extent that you're talking about dating or having a relationship between a 17-year-old and a 29-year-old, and my understanding is that there was no dating or any other relationship between the two, the victim and the defendant, so I agree.

(Tr. 170.) This comment was made at sidebar. Nothing prevented Wilson from advancing a theory of the case in which he and the victim had a relationship. In fact, defense counsel appeared to pursue this theory of the case at trial, both when it questioned the victim extensively regarding the contact she had with Wilson and during Wilson's own testimony. The court's determination that questioning potential jurors about their opinions on an uncharged offense was inappropriate does not constitute an abuse of discretion.

{¶ 15} Wilson also argues that the trial court abused its discretion by making a comment on sidebar during cross-examination of the victim. Defense counsel was attempting to impeach the witness with a prior inconsistent statement. Specifically, defense counsel was cross-examining the victim as to the differences in the stories she initially told her mother and boyfriend in 2000 and her statement in 2018. The trial court sustained objections to several of defense counsel's questions on the basis

that they were asked in a compound and unclear manner.  The specific exchange

Wilson is challenging in this appeal is as follows:

> DEFENSE COUNSEL:  All right.  Do you recall him asking you that question about whether or not — if you could remember whether or not you said yes or no when he asked you if he could touch you?
>
> WITNESS:  Yes.
>
> DEFENSE COUNSEL:  And what did you tell him?
>
> WITNESS:  That he touched — that he said that that's what he —
>
> DEFENSE COUNSEL:  No, my question, so you understand it, I apologize, is that did Detective Durst ask you did you remember if you said yes or no in response to my client's question if he could touch you, do you recall that question?
>
> PROSECUTOR:  Objection to the form of the question.

(Tr. 286-287.)  The court then asked counsel to approach the bench, and a

discussion was had at sidebar.

> THE COURT:  All right.  I think it is a little bit confusing because your question seems to include both what actually happened and what she told Detective Durst, so it's unclear I think to her and to me at times what question you're asking her.  Now, again I think you're right that the video camera that I just watched he did ask her after he asked to touch you, did you say yes or no.  And then she responds, she doesn't remember if she said yes or no.  But that was in specific response to the question about touching her.  But your question seemed to go back and forth between the initial can I touch you versus what happened after that exchange, so that's where you have to be much more —
>
> DEFENSE COUNSEL:  Specific.
>
> THE COURT:  — specific, consistent with what the video actually shows.

(Tr. 287-289.) Wilson argues that the court's statement referring to "what actually happened" and "what she told Detective Durst" was an abuse of discretion because it invaded the province of the jury by deciding a question of fact. We disagree. While the trial court did make a statement referring to "what actually happened," this was merely an attempt to clear up ongoing confusion regarding defense counsel's line of questioning. Further, this statement was made at sidebar and was not heard by the jury, and a review of the record does not reveal any other instances in which the court made the same or a similar characterization. Therefore, it is unclear how this comment had any impact, let alone a prejudicial impact amounting to an abuse of discretion, on Wilson's trial.

{¶ 16} Wilson also argues that the court's decision to sustain the aforementioned objection was an abuse of discretion because it denied Wilson's attempt to impeach T.A. with a prior inconsistent statement. We disagree. A review of the record shows that defense counsel was able to present T.A. with her prior inconsistent statement and cross-examine her with respect to this statement. To the extent that counsel's attempt to impeach T.A. was limited by either her testimony that she did not recall parts of her prior statement, or the fact that the impeachment may have been done in a somewhat confusing or convoluted manner cannot be attributed to the court. Therefore, the trial court did not abuse its discretion.

{¶ 17} Finally, Wilson argues that the trial court abused its discretion when it denied him the ability to expand on his theory that T.A. had been coached. During defense counsel's cross-examination of T.A., the following exchange occurred:

DEFENSE COUNSEL:  And how many times did you — when did you have this meeting with the prosecutor's office?

PROSECUTOR:  Objection.

THE COURT:  Sustained.

DEFENSE COUNSEL:  Do you recall when you reviewed the statement between May and August of this year?

PROSECUTOR:  Objection, it's been asked and answered.

THE COURT:  Overruled.

DEFENSE COUNSEL:  Do you know if it was in June, whether or not it was in July?

T.A.:  I don't remember which months.  I have visited quite often, maybe two, three times since the case opened.  So I don't know how many times I've actually looked at the piece of paper.

(Tr. 291-292.)  Wilson argues that the court abused its discretion by sustaining the initial objection because it prevented him from cross-examining T.A. with respect to the extent and subject of her conversations with the prosecutor.  This argument is undermined by the exchange that occurred immediately after the court sustained the state's objection, in which T.A. testified as to how many times she had visited the prosecutor since the case was opened.  Therefore, the court did not abuse its discretion in sustaining the initial objection.  Wilson's first assignment of error is overruled.

## II. Leading Question

{¶ 18}  In Wilson's second assignment of error, he argues that the trial court abused its discretion when it allowed the prosecutor to ask T.A. a leading question

on direct examination.  Specifically, Wilson argues that the following exchange was improper:

> PROSECUTOR:  What happened next?
>
> T.A.:  I just remember my body just kind of freezing.  I just remember my body freezing and just allowing him to put his hands down my pants, suck on my breast, taking off my pants, laying me down and putting his penis inside of me.
>
> PROSECUTOR:  What happened next?
>
> T.A.:  I just remember not even — just looking at him.  I looked over at the TV, the lighting, the flash, something.  And then I just realized at some point he was done and he ejaculated on my stomach and he grabbed a napkin or something out of his — like a bag or something he had nearby him and wiping me off.
>
> PROSECUTOR:  * * * I know this has been very difficult for you, but I do want to get into a little more detail about the lead-up to this.  What do you mean when you say you remember allowing him to do this to you?  Did you tell him no?
>
> T.A.:  At the time I was not feeling good.  I had a sore throat and I do remember saying no in the act, but at the same time I just remember my body just froze.  I just felt just powerless, so —

(Tr. 239.)  Because Wilson did not object to any part of this exchange, we are limited to plain error review.  Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The Supreme Court of Ohio has made clear that notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 19} "A leading question is 'one that suggests to the witness the answer desired by the examiner.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 149, citing 1 McCormick, *Evidence*, Section 6, at 19 (5th Ed.1999). Pursuant to Evid.R. 611(C), leading questions should not be used during direct examination "except as may be necessary to develop the witness' testimony." In light of this broad exception contained in the rule, courts have broad discretion to allow the use of leading questions. *State v. Johnson*, 8th Dist. Cuyahoga No. 82340, 2003-Ohio-6634, ¶ 11. Here, the prosecutor was attempting to direct the witness to elaborate on an earlier answer in which she said she "just [allowed] him to" initiate sexual contact. Although the question could have been answered with a "yes" or "no," it did not improperly suggest an answer to the witness. Therefore, we do not find plain error in the prosecutor's direct examination of T.A. This assignment of error is overruled.

### III. Immigration and Taxpayer Status

{¶ 20} In Wilson's third assignment of error, he argues that the court abused its discretion and denied him due process when it permitted the prosecution to introduce his immigration and taxpayer status. Specifically, Wilson argues that because his overstaying a visa and working under the table do not go to his truthfulness, questions regarding these matters should not have been permitted. We disagree.

{¶ 21} The decision whether to admit or exclude evidence is subject to review under an abuse of discretion standard, and reviewing courts will not disturb

evidentiary rulings absent a clear showing that the trial court abused its discretion and materially prejudiced a party. *State v. Barnes*, 8th Dist. Cuyahoga No. 104045, 2017-Ohio-383, ¶ 17, citing *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989).

{¶ 22} Evid.R. 608(B) provides as follows:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶ 23} As an initial matter, we note that defense counsel brought up Wilson's immigration status during voir dire. As such, Wilson's argument on appeal that any subsequent mention of his immigration status by the prosecution was prejudicial is not well taken. Wilson argues that a prior-bad-acts analysis is implied for this assignment of error, and asserts that prior bad acts not involving acts of dishonesty are not clearly probative of truthfulness. *State v. Tolliver*, 16 Ohio App.3d 120, 474 N.E.2d 642 (8th Dist.1984). Failure to report income or to pay taxes is evidence of dishonesty. *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439, ¶ 50, citing *State v. Coleman*, 5th Dist. Delaware No. 91-CA-34, 1992 Ohio App. LEXIS 4040 (July 31, 1992). Because this evidence is clearly probative of Wilson's

truthfulness, we find no abuse of discretion by the trial court in not excluding this evidence. This assignment of error is overruled.

## IV. Ineffective Assistance of Counsel

{¶ 24} In Wilson's fourth assignment of error, he argues that his counsel was ineffective for (a) not attempting to strike a juror during voir dire; (b) failing to object to a leading question during direct examination of the victim; (c) failing to properly impeach by prior inconsistent statement; and (d) failing to object to questions that attempted to use Wilson's prearrest silence against him.

{¶ 25} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

{¶ 26} In deciding a claim of ineffective assistance, reviewing courts indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance, and defendants must therefore overcome the presumption that the challenged action might be considered sound trial strategy. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland*.

{¶ 27} Wilson first argues that his counsel was ineffective for failing to strike a juror who volunteered during voir dire that when she was 11 years old, her 13-year-

old sister was raped by an older family member. At a sidebar, the juror disclosed this information and was questioned as to whether it would impact her ability to be fair and impartial. The juror confirmed that she would be able to set aside her sister's experience and evaluate this case only on the facts and evidence presented.

{¶ 28} R.C. 2945.25 enumerates the circumstances in which a juror may be challenged for cause. Wilson argues that the fact that the juror's sister was raped by a family member "obviously and significantly impacted" the juror, but he points to no support for this assertion, nor to any factor laid out in R.C. 2945.25 that would have supported challenging the juror for cause. Further, Wilson has failed to establish that his trial counsel was ineffective for failing to exercise a peremptory challenge to exclude this juror. Where the juror indicated that she could be fair and impartial, counsel accepted this representation, and the record does not support a conclusion that counsel's failure to exercise a peremptory challenge prejudiced the defendant, trial counsel was not ineffective. *State v. Goodwin*, 84 Ohio St.3d 331, 341, 703 N.E.2d 1251 (1996).

{¶ 29} Wilson also argues that his counsel was ineffective for failing to object to the prosecutor's use of a leading question during direct examination of T.A. The failure to object to leading questions in direct examination "will almost never rise to the level of ineffective assistance of counsel." *State v. Howard*, 2d Dist. Montgomery No. 20575, 2005-Ohio-3702, ¶ 48. As discussed above, the trial court has broad discretion to permit leading questions on direct examination for the purpose of developing a witness's testimony. Because counsel's question to T.A. was

not clearly a leading question, we cannot conclude that the failure to object constituted deficient performance. Further, Wilson has failed to show a reasonable probability of a different outcome if his counsel had objected. Because Wilson has not satisfied either prong of the *Strickland* test, counsel's failure to object does not constitute ineffective assistance of counsel.

{¶ 30} Wilson also argues that trial counsel's failure to impeach a witness constituted ineffective assistance of counsel. Specifically, Wilson argues that defense counsel failed to use the proper format for introducing the prior inconsistent statement. We have already acknowledged that defense counsel's attempt to impeach T.A. was confusing and convoluted. Despite this confusion, however, counsel attempted to impeach T.A. using her prior inconsistent statement in accordance with the rules of evidence. While counsel's attempt to impeach T.A. was perhaps not the model of clarity, it did not fall below an objective standard of reasonableness so as to be deficient. Furthermore, our review of the record shows that the witness's own testimony had more of an impact on counsel's ability to impeach her than the method in which counsel attempted to impeach her. Therefore, counsel's attempt to impeach T.A. does not constitute ineffective assistance of counsel.

{¶ 31} Finally, Wilson argues that his counsel was ineffective for failing to object to the state's attempt to use his prearrest silence against him. Wilson refers to the following exchange:

THE PROSECUTOR: At the time you disclosed to your family what had occurred the night before, did Mr. Wilson — you testified that he denied it. Did he ever acknowledge having consensual sex with you during that argument?

T.A.: No.

THE PROSECUTOR: Did he ever allege that you came on to him?

T.A.: No.

(Tr. 261.) Wilson argues that "the implication is the introduction of pre-arrest, pre-Miranda substantive evidence of guilt," which he asserts is inadmissible pursuant to *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335. We do not find *Leach* to be directly applicable to this case. In that case, the Ohio Supreme Court held that it was improper for the state to introduce evidence that the defendant had initially agreed to speak to the police, but did not keep his arranged appointment to do so. "'A defendant's decision to exercise his right to remain silent during police interrogation is generally inadmissible at trial either for purposes of impeachment or as substantive evidence of guilt.'" *State v. Croskey*, 8th Dist. Cuyahoga No. 107772, 2019-Ohio-2444, ¶ 15, quoting *State v. Alghaben*, 8th Dist. Cuyahoga No. 86044, 2005-Ohio-6490, ¶ 37, citing *State v. Perez*, 3d Dist. Defiance No. 4-03-49, 2004-Ohio-4007, and *Leach*. Unlike *Leach* and the cases applying it, the above exchange regarding Wilson's "pre-arrest silence" does not implicate his Fifth Amendment right against self-incrimination. A conversation among family members is very different than a police interrogation and does not trigger a defendant's Fifth Amendment rights. Because Wilson has failed to establish the

inadmissibility of the testimony, we cannot find that he has satisfied either prong of the *Strickland* test.  Therefore, his fourth assignment of error is overruled.

## V. Cumulative Error

{¶ 32} In his fifth and final assignment of error, Wilson argues that even if the foregoing errors did not individually deprive him of a fair trial, their cumulative effect resulted in a denial of his due process.  Because we do not find merit to any of Wilson's foregoing assigned errors, we decline to find that their cumulative impact deprived Wilson of a fair trial.  This assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR