[Cite as *State v. Carter*, 2024-Ohio-2166.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,              :

                                  No. 113021

    v.                               :

DEONTE LASHAWN CARTER,                      :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:**  June 6, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676851-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Dominic Neville, Assistant Prosecuting Attorney, *for appellee*.

Scott J. Friedman, *for appellant*.

ANITA LASTER MAYS, J.:

{¶ 1}  Defendant-appellant, Deonte Lashawn Carter ("Carter"), appeals his jury trial convictions for multiple counts.  We affirm the trial court's judgment and remand the case for the sole purpose of imposing and journalizing the gun forfeiture.

**Background and Facts**

{¶ 2} On December 21, 2022, Carter was indicted for offenses that allegedly occurred on or about December 11, 2022. Count 1, aggravated robbery under R.C. 2911.01(A)(1), a first-degree felony; Counts 2 and 3, robbery under R.C. 2911.02(A)(1), a second-degree felony, and 2911.02(A)(3), a third-degree felony, respectively; Count 4, having weapons while under disability pursuant to R.C. 2923.13(A)(3), a third-degree felony; and Count 5, resisting arrest, a second-degree misdemeanor, R.C. 2921.33(A). The three robbery counts carried one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A). Counts 1 through 4 carried weapon forfeiture specifications pursuant to R.C. 2941.1417(A).

{¶ 3} The jury trial commenced on July 10, 2023. The weapons while under disability Count 4 was tried to the bench.

{¶ 4} Victim Denario Jones ("Jones") testified that on December 11, 2022, between 5:00 and 6:00 p.m., he stopped at the Union Beverage store to pick up a pint of Paul Masson brandy. He noticed a few males hanging out in front of the store wearing ski masks but was not concerned because the weather was cold. Jones made his purchase, and as he returned to his SUV, he was approached by two of the ski-masked males. The male wearing a black hoodie approached from the passenger side of Jones's SUV and pointed a gun in Jones's face. The second man wearing a red hoodie approached from behind and held a gun to the back of his neck.

{¶ 5} The men disposed Jones of everything in his pockets including his brandy, iPhone, Air Pods, and wallet, and threw his car keys across the parking lot.

They left in a dark-colored vehicle. "All of the lights was out, so I wasn't able to see. It could have been gray or black." Tr. 205. Jones did not see their faces due to the ski masks. When asked what the guns looked like, he responded, "The one that I seen was some kind of silver handgun. That's what I noticed." Tr. 203.

{¶ 6} Jones retrieved his keys, informed the store clerk, returned home, and called 911 from his work iPhone. The recording was played for the trial court, refreshing Jones's recollection that the men were driving a small silver car.

{¶ 7} Using the iPhone tracking application on his work phone, Jones located his personal iPhone on East 118th Street "right behind the liquor store" and showed the location information to members of the Cleveland Police Department ("CPD") who arrived at his house within 30 minutes to an hour of his report. Tr. 209. Police sent a squad car to the tracked iPhone location on East 118th Street where a male wearing a red hoodie was located along with Jones's wallet and liquor. Jones was taken to the location in the squad car where his wallet was returned to him. The wallet was empty except for a photograph of his daughter.

{¶ 8} Jones stated the photograph of a weapon presented to him for identification looked like the silver handgun used during the robbery. He also identified photographs of the brandy and bag. Jones described the male wearing the black hoodie as slimmer and slightly taller than him. The male wearing the red hoodie was wearing black or gray pants and was about Jones's size of 5 feet 9 inches and 190 pounds that he described as "heavyset."

{¶ 9} Jones did not participate in a "cold stand" where a victim is taken to the arrest scene to identify a suspect. He told police that he would not be able to identify the suspects because both were wearing full ski masks.

{¶ 10} Still tracking his iPhone, Jones told police the phone had moved to East 131st Street. Police responded to the location and, according to Jones, "arrested one guy who matched the description, and that's one thing that came from them tracking the phone, and then the very next day actually was able to track my phone to another location." Tr. 219-220.

{¶ 11} CPD Patrol Officer Ratti ("Ofc. Ratti") was one of the officers dispatched to assist with checking the house on East 118th Street for suspects. The house was damaged and appeared to have been vacant for quite some time. A fellow officer looked inside of a small crawl space on the second floor and located a suspect hiding in the far corner. The suspect was wearing a red hoodie and as depicted on the bodycam and emphasized by the defense, red Nike sweatpants. The suspect was not complying with demands to surrender and "kept asking, 'Why are you doing this to me? I live here.'" Tr. 231. Eventually, "the drywall underneath him gave out due to being waterlogged" and the suspect fell through the floor.

{¶ 12} Ofc. Ratti continued:

> I believe after he was escorted out of the vehicle, we went back upstairs. Like I said, checked the crawl space for evidence. At that time, like I said, we were able to locate a gun within — when he was exiting, trying to exit the crawl space and fell through the floor we were able to locate a firearm within his arm's reach.

Tr. 238. The firearm was a silver semiautomatic handgun. The officers did not look for other evidence for fear of falling through the floor.

{¶ 13} The victim's wallet was located on the tree lawn. A silver disabled car was on the corner where the house was located. The vehicle was about 20 feet from the vacant house and was parked "kind of off to the side almost in the middle of the street with its hazards on." Tr. 244.

{¶ 14} CPD Officer Shingary ("Ofc. Shingary") reported to Jones's home in response to the 911 call with the information that Jones was robbed by two black males wearing ski masks. Shingary was informed that "[o]ne was wearing like a black jogging suit and the other one had on a red sweatshirt, one black handgun and one silver." Tr. 260. One suspect was slimmer than the other. The officer described viewing the iPhone tracking location at 3634 East 118th Street at Craven Avenue and going to the address with her partner.

{¶ 15} At the location, Ofc. Shingary observed a silver-gray Chevy with flashing hazard lights and a missing tire in the street that looked as though someone had bailed out of it, near a house that appeared to be abandoned. The car was in front of the house, and the officer believed the doors were closed.

{¶ 16} When backup officers arrived, all of the officers entered the house. The second-floor crawl space entry was very small, and the officer said she and other officers could not fit through it. The suspect ultimately fell through the attic crawl space floor. The officer put the suspect in handcuffs and removed his phone and identification from the pockets of his red jogging suit. The identification contained

the name "Deonte Carter." Carter told police he was in the crawl space because he was homeless.

{¶ 17} Jones was brought to the site, said the suspects wore ski masks and things happened so quickly he would not be able to identify them, so Carter was not brought out in front of the victim. The officer confirmed that the exhibit photograph of a silver and black handgun was the one obtained from the crawl space. The height and weight listed for Carter in the officer's report was 5 feet 7 inches and 165 pounds.

{¶ 18} Carter was kicking the interior of the zone car doors when arrested and refused to calm down. He was transported to the hospital complaining of leg pain.

{¶ 19} CPD detective Emerick ("Det. Emerick") described the contents of the 44 photographs he took of the house located on East 118th Street, the silver car, gun, and other evidence, and explained why he took them. He also swabbed the gun for DNA before he photographed it. The detective shared his knowledge about latent fingerprints but did not check the evidence for prints or DNA.

{¶ 20} The state rested. The defense moved for judgment of acquittal under Crim.R. 29 that was denied, presented no evidence, and renewed the acquittal motion that was again denied.

{¶ 21} The jury found Carter guilty of Counts 1, 2, 3, and 5 in addition to the gun and forfeiture specifications. Carter addressed the court regarding the Count 4 weapons while under disability count that was tried to the bench. He explained that he did not have possession of the gun and it was not within his reach. "I was falling

into a hole.  They were grabbing my arms and I was telling them that I was going through a hole." Tr. 402.  The trial court found him guilty.

{¶ 22} The conviction resulted in a violation of Carter's current probation. He was sentenced to time served on that case.  The robbery counts merged into the aggravated robbery count:

> Counts 2 and 3 will merge into Count 1 with the exception of the firearm specifications.  The firearm specifications, the one and three year will merge in each count. The firearm specification in Count 1, which would be three years, will run consecutive to the firearm specification on Count 2, for a total of six years of mandatory gun specification time. That has to be served prior to and consecutive to the other underlying offense, which is the aggravated robbery, to which you will be sentenced to a minimum of four years, a maximum of six years, under Reagan Tokes. The four years is the minimum term. There's a presumption that you will be released after that four years, but that doesn't count the mandatory six years of gun specifications, so you'll serve that, and whether you go on to serve an additional four or additional six will be up to the ODRC. There is a presumption you would be released after the minimum of the underlying offense is served.  However, the ODRC has the legal right under Senate Bill 2[0]1 to rebut that presumption and extend your period of confinement for 10 years of the term I have imposed.  If ODRC makes that decision, you'll be released after the additional time is served. * * *
>
> * * * So that would be a total, with the gun specs and the underlying offense[s], 10 years up to 12 years.
>
> With regard to Count 3, the gun specification will run concurrent.  In Count 4, the having weapons under disability, you'll be sentenced to 12 months.  That will run concurrent to Count 1.  And then resisting arrest, a misdemeanor of the second degree, it will be 90 days, and that will also run concurrent to the other counts.

 Tr. 411-415.

{¶ 23}  Carter appeals.

**Errors Assigned on Appeal**

{¶ 24} Carter presents two assignments of error that we combine for ease of analysis. Carter's convictions for aggravated robbery and robbery (1) were not supported by sufficient evidence, and (2) were against the manifest weight of the evidence.

**Standard of review**

{¶ 25} "Because a Crim.R. 29 motion for acquittal questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 26} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 27} When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist.

Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at *id*. Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 28} A manifest weight challenge and a sufficiency of the evidence challenge pose two distinct challenges to the evidence presented. *State v. Miree*, 2022-Ohio-3664,199 N.E.3d 72, ¶ 30, (8th Dist.), citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins* at *id*. Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id*., quoting *Wilson* at ¶ 25, citing *Thompkins* at 386-387.

{¶ 29} In reviewing a manifest-weight claim, an appellate court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d at 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Id*., quoting *id*.

**Discussion**

{¶ 30} "When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless." *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990). *See also State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12 ("For the purposes of R.C. 2941.25, a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty.") A defendant cannot challenge a conviction that was merged because "[t]he counts that merged with the aggravated murder conviction are not convictions, and therefore, we cannot individually review the evidence supporting those findings of guilt." *Worley* at ¶ 23. Therefore, this court reviews the sufficiency of the evidence supporting the challenged conviction for aggravated robbery.

{¶ 31} Carter states that "'the mere presence of an accused at the scene of a crime is not sufficient to prove guilt.'" Appellant's brief, p. 6, quoting *State v. Hollins*, 8th Dist. Cuyahoga No. 107642, 2020-Ohio-4290, ¶ 42. Carter argues that Jones's iPhone was not found at the house where he was located, and the iPhone locator indicated the phone was still traveling. Jones testified that he could not identify the assailants and police did not present Carter to Jones for identification purposes when Jones was brought to the house. There was no evidence Carter ever

possessed the wallet or bottle of brandy. Carter was wearing a red track suit and not dark pants as Jones reported. Carter had a silver gun that was not connected to the crime except for its color, and no ski mask was found. There were no prints or DNA connecting Carter directly to the evidence, and Carter was not of similar height and build to Jones, which is how Jones described the assailant in the red hoodie. Carter told the police he was on the premises because he was homeless.

{¶ 32} The state counters that Carter was near the stolen contraband, matched the description of one of the assailants, was found with a silver firearm, and was in the GPS location of the victim's stolen phone. In support, the state offers that the facts in *State v. Franks*, 61 Ohio App.2d 51, 57, 398 N.E.2d 817 (8th Dist.1979), are analogous and this court affirmed the appellant's conviction though the stolen contraband was not found on appellant's person and there was no witness identification of appellant.

{¶ 33} The facts in *Franks* are distinguishable as indicated by Carter. Though there are some similarities, a license plate number was provided for the getaway vehicle in *Franks*. Witnesses said one of the assailants wore a tan shirt. Franks was riding shirtless in the back seat of the getaway vehicle when arrested and admitted that a tan shirt in the vehicle belonged to him. A detailed description of the gun was provided. The gun was located under the seat of the getaway vehicle along with the contraband.

{¶ 34} "When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same

probative value as direct evidence." *State v. Garcia*, 8th Dist. Cuyahoga No. 107027, 2022-Ohio-3426, ¶ 32, quoting *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 45, citing *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 272-273.

{¶ 35} Carter was found hiding in the crawl space of an abandoned house, with a silver gun, in a location the iPhone was tracked to, that was not far from the scene of the robbery, wearing a red hoodie. A silver car was stopped somewhat askew from the curb by the house with hazard lights flashing and contained a bottle of the same size and brand that Jones purchased from the beverage store. Jones's wallet was found on the tree lawn.

{¶ 36} As to the manifest weight of the evidence, "[d]eterminations of credibility and weight of the testimony remain within the province of the trier of fact." *State v. Newman*, 8th Dist. Cuyahoga No. 109182, 2020-Ohio-5087, ¶ 27, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "[T]he factfinder may take note of the inconsistencies and resolve them accordingly, 'believ[ing] all, part or none of a witness's testimony.'" *Id.*, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 37} We find that viewing the evidence in a light most favorable to the prosecution, a "'rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus. Thus, we find that the evidence was sufficient in this case.

{¶ 38} In addition, based on our review of the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and determining whether in resolving conflicts in the evidence, we cannot say that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered." *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41.

{¶ 39} The assigned errors are overruled.

{¶ 40} However, we sua sponte observe that the gun forfeiture was not imposed during sentencing or in the journal entry. Therefore, we remand the case to the trial court for that purpose only.

**Conclusion**

{¶ 41} The judgment of the trial court is affirmed; however, the case is remanded for imposing and properly journalizing the gun forfeiture.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for imposing and properly journalizing the gun forfeiture and for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR