[Cite as *State v. Hughes*, 2025-Ohio-1730.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114098 |
| v. | : | |
| TRAVEON HUGHES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 15, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-671990-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kerry A. Sowul and Jillian Piteo, Assistant Prosecuting Attorneys, *for appellee.*

Russel S. Bensing, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Traveon Hughes ("Hughes") appeals his convictions for murder, involuntary manslaughter, and endangering children (under both R.C. 2919.22(A) and (B)(1)). For the following reasons, we affirm the trial court's judgment.

## I.   Factual Background and Procedural History

{¶ 2}   In connection with the June 25, 2022 death of his son, a 13-week-old baby, Hughes was charged with Count 1: murder, an unclassified felony, in violation of R.C. 2903.02(B); Count 2: endangering children, a felony in the second degree, in violation of R.C. 2919.22(B)(1); Count 3: involuntary manslaughter, a felony in the first degree, in violation of R.C. 2903.04(A); and Count 4: endangering children, a felony in the third degree, in violation of R.C. 2919.22(A).

{¶ 3}   On May 22, 2024, the case proceeded to a jury trial. On May 29, 2024, the jury found Hughes guilty of all counts.

{¶ 4}   The court merged Counts 1 through 4 for purposes of sentencing, and the State elected to sentence on Count 1. The court imposed a prison sentence of life with parole eligibility after 15 years.

{¶ 5}   Hughes appeals, raising the following assignments of error:

I.     The trial court erred in entering a conviction based upon insufficient evidence, in derogation of defendant's rights to due process of law, as protected by the Fifth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

II.     The trial court erred in admitting expert testimony in violation of Crim.R. 16(K).

III.     The trial court erred in admitting evidence of the defendant's bad character, in violation of Evid.R. 404(A).

## II.  Trial Testimony

### A. Molly Madras

{¶ 6}   Molly Madras ("Madras") testified that she is a patrol officer with the Cleveland Division of Police. On June 25, 2022, Madras responded to a call

regarding a baby who was "dead on arrival" at MetroHealth Hospital. Madras collected from hospital staff a baby wipe that was "bright red" and "balled up." Madras spoke with hospital personnel, Hughes, and the baby's mother, Acieiona McEwen ("Mother"). Madras stated that Mother was "pretty upset" and that she could not remember Hughes's demeanor.

## B. Gary Bracken

{¶ 7} Gary Bracken ("Bracken") testified that he is a paramedic for the Cleveland Division of Emergency Medical Services ("EMS"). On June 25, 2022, Bracken and his partner attempted to resuscitate the baby at a house on W. 81st Street. The baby was gasping and had no pulse. Bracken also observed that the baby was silent, the baby's mouth had blood in it, his abdomen was swollen, and his eyes were unmoving. Bracken believed the baby was experiencing cardiac arrest. EMS attempted CPR and administered oxygen to the baby. EMS also attempted to establish an airway by inserting an "i-gel," which hit an obstruction that Bracken described as "a balled up something." EMS removed this obstruction and transported the baby to the hospital.

## C. Emilee Ritchie

{¶ 8} Dr. Emilee Ritchie ("Ritchie") testified that she is an emergency room attending physician at MetroHealth Hospital. In this role, she handles both medical and traumatic emergencies for patients of all ages, including pediatrics. Ritchie completed four years of medical school at Ohio University and residency training in

emergency medicine at the Cleveland Clinic and MetroHealth Hospital. She is board certified in emergency medicine.

{¶ 9} Ritchie treated the baby upon arrival at MetroHealth Hospital on June 25, 2022. Ritchie testified that the baby arrived at the emergency room in cardiac arrest and was not breathing. Under Ritchie's direction, the baby received CPR but remained unresponsive. Ritchie directed nurses to administer medication and attempted to establish an airway and intubate the baby. The baby did not resume breathing. Dr. Ritchie pronounced the baby dead at 8:30 a.m.

{¶ 10} EMS provided Ritchie the obstruction they removed from the baby's throat. Ritchie testified that it appeared to be a bloody wipe.

{¶ 11} Ritchie spoke to Hughes and Mother. Through this conversation, she learned the baby was 13 weeks old and had been born prematurely at 26 weeks. Hughes also told Ritchie he left a baby wipe next to the baby, left the room for 10 to 20 minutes, and, upon returning, found the baby "had the baby wipe in his mouth" and "was not breathing or responsive."

{¶ 12} Ritchie was involved in a decision to call the Cleveland Police regarding the baby's death, though she could not remember whether she personally placed the call. Richie testified that Cleveland Police were called "[f]or a number of reasons. One being that I was concerned that there were some inconsistencies in the history that was provided. Another being I was also concerned that the description of the injuries may not be within the developmental ability of the patient. . . ."

### D. Cassendra Jezior

{¶ 13} Cassendra Jezior ("Jezior") lived downstairs from Hughes on W. 81st Street. On June 25, 2022, Jezior awoke to banging on her bedroom door. Hughes was yelling for help because the baby was choking. Jezior stated Hughes told her that the baby choked on a wipe he left with the baby while he was out of the room. Jezior helped Hughes call 9-1-1 and administered CPR. Jezior stated that she never observed anything lodged in the baby's mouth.

{¶ 14} On cross-examination, Jezior stated that Hughes was "the best dad to his son and a great uncle to my kids."

### E. Michael Hale

{¶ 15} Detective Michael Hale ("Hale") testified that he is a crime-scene detective with the Cleveland Division of Police. Hale took photos of the baby and the W. 81st St. residence. Hale also collected a package of Fisher Price baby wipes from the residence.

### F. Marissa Esterline

{¶ 16} Marissa Esterline ("Esterline") testified that she is a forensic scientist at the Cuyahoga County Regional Forensic Science Laboratory in the DNA Department. Esterline analyzed items submitted to the lab regarding the baby's death, including the wipe and buccal swabs from Hughes and the baby. Esterline found the baby's DNA on the wipe, but not Hughes's DNA.

### G. Todd Barr

{¶ 17} Todd Barr ("Barr") testified that he is a forensic pathologist with the Cuyahoga County Medical Examiner's Office. Barr performed an autopsy on the baby. Barr stated at trial that the baby died "as a result of asphyxiation" because there was "something blocking his airway." Barr stated the baby weighed eight and one-half pounds, was "essentially the size of a newborn," and "very small for a 13-week-old." Barr also stated, "A 13-week-old doesn't have the dexterity and ability" to force a wipe to "the back of their throat." Barr concluded the death was a homicide.

### H. Charles Schultz

{¶ 18} Charles Schultz ("Schultz") testified that he is a homicide detective with the Cleveland Division of Police. Schultz examined the cellphones of Hughes and Mother, which contained videos and photographs of the baby. Schultz also extracted from the phones call logs from June 25, 2022. The call logs showed that Hughes's and Mother's phones called each other multiple times that morning, starting at 6:43 a.m. The last call between the two phones began at 7:28 a.m. and ended 7:35 a.m. Hughes's phone then called 9-1-1 at 7:36 a.m.

### I. Mother

{¶ 19} On June 25, 2022, Mother left for work between 6:30 a.m. and 6:45 a.m. When she arrived at work, she called Hughes on FaceTime. Mother testified that Hughes routinely placed wipes under the baby's chin to use as a bib and did so while on the phone with her. Hughes placed a wipe under the baby's neck and went

into another room.  Then, Mother heard Hughes screaming that the baby was choking.  On FaceTime, Mother saw Hughes pick the baby up and run out of the room.

{¶ 20} Mother stated that Hughes "was a wonderful father."  Mother also stated that the baby was "very advanced for his age" and that "[a]nything that was around him, . . . [h]e would grab it and place it in his mouth. . . ."

### J.  Traveon Hughes

{¶ 21} Hughes testified that he and Mother moved to Cleveland from Chicago with their baby in June 2022.  On June 25, 2022, Hughes fed the baby a bottle.  The baby was spitting up milk on his bib, so Hughes removed it to clean.  In place of the bib, Hughes placed a wipe under the baby's chin.  Hughes called Mother on FaceTime and left the room to throw away a diaper.  When he returned, he saw the baby was in distress and saw an object in his mouth that looked like a cloth.  Hughes testified that he was unable to remove the obstruction and that he tried to help the baby but "he is not letting me."  Hughes explained that his "fingers is long" and "my fingers is big," so "me trying to help my baby, it wasn't going to work. . . ."  Hughes then ran to Jezior for help, who called 9-1-1.

{¶ 22} Hughes stated that his son was "unique" and would grab "anything that's in his face. . . ."  During cross-examination, the State asked Hughes about whether he lied to North Coast Healthcare Center employee Ashley Vandercar ("Vandercar") in prior statements about not using marijuana and working for Amazon.

### III. Law and Analysis

#### A. First Assignment of Error — Sufficiency of the Evidence

{¶ 23} In his first assignment of error, Hughes asserts that the record lacks sufficient evidence to support his convictions. Regarding Counts 1 and 2, Hughes takes issue only with the testimony of Ritchie, the emergency-room doctor who attempted to resuscitate the baby at MetroHealth Hospital. At trial, the State attempted to demonstrate that the baby lacked the physical ability to force the wipe down his own throat, suggesting Hughes must have done so. Hughes argues Ritchie testified as an expert when she stated that she "had concerns" that the baby "may not be within the developmental ability of the child" to push the wipe down his own throat. This testimony was inadmissible, Hughes reasons, because the State did not provide him an expert report, as Crim.R. 16(K) requires when a party furnishes an expert witness. Had Ritchie's testimony been excluded, Hughes argues, the record evidence would be insufficient to support his conviction.

{¶ 24} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 25} When making a sufficiency determination, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at *id.* Under a sufficiency challenge, witness credibility is immaterial.

{¶ 26} Hughes's conviction for murder under R.C. 2903.02(B) ("felony murder") required the State to prove beyond reasonable doubt that he caused the baby's death as a proximate result of committing an offense of violence that is a felony in the first or second degree, other than violations of R.C. 2903.03 or 2903.04. R.C. 2901.01 identifies offenses of violence, including endangering children under R.C. 2919.22(B)(1).

{¶ 27} Pursuant to R.C. 2919.22(B)(1), "[n]o person shall do any of the following to a child under eighteen years of age . . . abuse the child." The word "abuse" is not defined by the criminal statutes. *State v. Hickman*, 2013-Ohio-4192, ¶ 19 (8th Dist.). However, as relevant here, the term "child abuse" has been defined as "'an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child.'" *State v. Snyder*, 2011-Ohio-1062, ¶ 17 (8th Dist.).

{¶ 28} We disagree with and address below Hughes's assertion that Ritchie's testimony should have been excluded. However, had it been excluded, the record would still contain sufficient evidence to support Hughes's convictions for Counts 1 and 2. It is undisputed that the baby is under eighteen years of age. There is no

question that forcing a wipe down a baby's throat is an act of abuse; the only question is whether Hughes did so. Hughes does not contest that he was alone with the baby when the wipe became lodged in his throat. Also undisputed is that the wipe lodged in the baby's throat caused the baby to die of asphyxiation.

{¶ 29} The State's case, that it was Hughes who forced the wipe down the baby's throat, was based on circumstantial evidence. Circumstantial evidence "is evidence that requires 'the drawing of inferences that are reasonably permitted by the [direct] evidence.'" *State v. Evans*, 2020-Ohio-3968, ¶ 37 (8th Dist.), quoting *State v.* Cassano, 2012-Ohio-4047, ¶ 13 (8th Dist.). "Circumstantial and direct evidence are of equal evidentiary value." *Id.* at ¶ 38, citing *State v. Santiago*, 2011-Ohio-1691, ¶ 12 (8th Dist.). "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Hartman*, 2008-Ohio-3683, ¶ 37 (8th Dist.), citing *State v. Griesheimer*, 2007-Ohio-837 (10th Dist.).

{¶ 30} The record included sufficient evidence to establish that Hughes pushed the wipe down the baby's throat. Medical examiner Barr, who performed the autopsy on the baby, provided expert-opinion testimony regarding the cause and manner of the baby's death. Barr stated at trial that the baby died "as a result of asphyxiation" because there was "something blocking his airway." Barr then opined, "A 13-week-old doesn't have the dexterity and ability" to force a wipe to "the back of their throat." Barr further testified that he ruled the death a homicide.

{¶ 31} Video evidence also supported Hughes's conviction. The State also presented several videos of the baby that were recorded in the month prior to his death. The videos depict the baby being held, lying down, being changed, and nursing from a bottle. In several of the videos, the baby's arms hang loosely at his sides or reach and flail without direction. None of the videos depict the baby picking up or moving an object. A reasonable jury could have concluded from these videos that the baby did not have the strength and dexterity to force a wipe down his own throat. The videos of the baby, Barr's testimony, and the fact that Hughes was alone with the baby when he choked on the wipe were sufficient evidence to support Hughes's convictions for Counts 1 and 2.

{¶ 32} We decline to address Hughes's arguments that the record lacks sufficient evidence that he created a "substantial risk to the health or safety of the child" to support his conviction for Counts 3 and 4.

> When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless.

*State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist.), citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990). *See also State v. Carter*, 2024-Ohio-2166, ¶ 29 (8th Dist.), citing *State v. Worley*, 2024-Ohio-2166, ¶ 23 (8th Dist.) ("[W]e cannot individually review the evidence supporting . . . findings of guilt" for counts that merged with an aggravated-robbery conviction, where the court found sufficient evidence supported the aggravated-robbery conviction.).

{¶ 33} As stated above, we find sufficient evidence supported Hughes's conviction for felony murder. The record also included sufficient evidence to support Hughes's conviction for the offense of violence — endangering children under R.C. 2919.22(B)(1) — underlying his felony-murder conviction. Even if the record contained insufficient evidence to support Hughes's convictions for Counts 3 and 4, such error would be harmless.

{¶ 34} Accordingly, assignment of error No. 1 is overruled.

### B. Second Assignment of Error — Ritchie's Opinion Testimony

{¶ 35} Repeating his above arguments that the State impermissibly presented Ritchie as an expert without providing an expert report, Hughes asserts that the court should have excluded Ritchie's testimony that it may not have been within the developmental ability of the baby to force the wipe down his throat. We disagree.

{¶ 36} We find the trial court did not abuse its discretion by admitting Ritchie's testimony. Ritchie did not assert that it was outside the baby's developmental ability to push the wipe down his own throat. She merely responded to a question about why she contacted the police, testifying that one of the reasons was that she had a "concern" that pushing a wipe to the back of the baby's throat "may not be within the developmental ability" of the baby.

{¶ 37} Evid R. 701 states that a lay witness — a witness not recognized as an expert — may testify about "opinions or inferences which are (1) rationally based on

the perception of the witness and (2) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue."

{¶ 38} On this topic, the Supreme Court of Ohio has stated:

> It is consistent with [the] emerging view of Evid.R. 701 that courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. . . . Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience.

*State v. McKee*, 91 Ohio St.3d 292, 296-297 (2001).

{¶ 39} This court reviews a trial court's determination of the admissibility of

lay-witness opinion testimony for an abuse of discretion. *State v. Allen*, 2010-Ohio-

9, ¶ 46 (8th Dist.).

{¶ 40} Any opinion contained in Ritchie's explanation for her conduct was

based on facts within her perception, as Evid.R. 701 allows lay opinion testimony to

be. Ritchie helped attempt to resuscitate the baby. Under Ritchie's direction, the

baby received CPR. Ritchie also directed nurses to administer medication and

attempted to establish an airway and intubate the baby. During these efforts, Ritchie

observed the baby's injuries. Ritchie testified that the baby arrived at the emergency

room in cardiac arrest, was not breathing and was unresponsive to CPR, and that a

"cloth-like paper object" was lodged in his throat. Ritchie also observed firsthand

the baby's relative size and age. Ritchie thus inferred that the baby may not have

been able to asphyxiate himself based on her own perception of the baby's development and injuries, rather than facts outside her perception, as would an expert witness required to provide a report under Crim.R. 16(K).

{¶ 41} Ritchie's opinion that the baby may not have been able to force a wipe down his own throat is helpful to determining a matter of consequence, specifically, whether Hughes did so. For these reasons, the trial court did not abuse its discretion by admitting Ritchie's testimony. Accordingly, assignment of error No. 2 is overruled.

### C. Third Assignment of Error — Evidence of Hughes's Character

{¶ 42} Lastly, Hughes asserts that the trial court erred in admitting evidence of his "bad character." Specifically, Hughes challenges the State's questioning of him about whether he smoked marijuana, about where he worked and about potentially dishonest prior statements regarding both topics. The State also asked Hughes about what he did and who he associated with while he lived in Chicago, before moving to Cleveland, and whether he was faithful to Mother.

{¶ 43} Evid.R. 608(B) allows parties to attack a witness's credibility by cross-examining the witness about specific conduct that is probative of their character for truthfulness or untruthfulness. *State v. Jones*, 2015-Ohio-2151, ¶ 37 (8th Dist.) (allowing witness's character for truthfulness to be attacked through cross-examination about her filing a false police report in a prior, unrelated incident). *See State v. Wilson*, 2019-Ohio-4056, ¶ 23 (8th Dist.) (allowing testifying defendant's

character for truthfulness to be attacked through cross-examination about his failure to report income for tax purposes, which is "evidence of dishonesty").

{¶ 44} Prior bad acts must usually involve dishonesty to be probative of a witness's character for truthfulness under Evid.R. 608(B). "Generally, prior bad acts that do not involve instances of dishonesty, are not clearly probative of truthfulness." *State v. Hall*, 2016-Ohio-7301, ¶ 25 (8th Dist.), citing *State v. Tolliver*, 16 Ohio App.3d 120 (8th Dist. 1984) (explaining that "[o]nly matters which are relevant to truth and veracity, and not to a witness's general moral character, are the proper subject of cross-examination" and that "[p]articular facts which tend to discredit the reputation of a person who is sought to be impeached in other respects than as to his reputation for truth and veracity are inadmissible"). *See State v. Penland*, 2023-Ohio-806, ¶ 69 (8th Dist.) (a witness's failure to appear for prior court proceedings was not "clearly probative" of her truthfulness or untruthfulness).

{¶ 45} Hughes did not object at trial to the cross-examination questions that he now appeals. By failing to object at trial, he waived all but plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 3 (failure to object to an error in the trial court forfehis all but plain error on appeal). "Crim.R. 52(B) authorizes appellate courts to correct 'plain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Mosby*, 2024-Ohio-5210, ¶ 24 (8th Dist.). "To prevail under a plain error analysis, the appellant bears the burden of demonstrating, but for the error, the

outcome of the trial would clearly have been different." *Id.*, citing *State v. Payne*, 2007-Ohio-4642, ¶ 17.

{¶ 46} The trial court did not commit plain error by allowing the State to cross-examine Hughes about whether his prior statements to North Coast Healthcare Center employee Vandercar about not using marijuana and working for Amazon were true. Hughes testified in his own defense, making his character for truthfulness relevant. The State asked Hughes whether he remembered telling Vandercar that he did not use marijuana and worked at Amazon. The State also asked questions that examined whether these statements were accurate. Hughes's purportedly dishonest statements to Vandercar are probative of his character for untruthfulness. The State was, therefore, permitted to ask Hughes whether he made these statements and whether he in fact used marijuana and worked at Amazon.

{¶ 47} We also find the court did not commit plain error by admitting evidence of Hughes's potential infidelity and conduct in Chicago. Ordinarily, Evid.R. 404(A) prevents parties from offering evidence of a person's character to prove "action in conformity therewith on a particular occasion." However, a criminal defendant may offer evidence of his own "pertinent trait of character" "as proof that he . . . did not commit the act charged because such conduct is not in accord with his . . . character." *State v. Wilk*, 2022-Ohio-1840, ¶ 53 (8th Dist.); Evid.R. 404(A)(1). In so doing, the defendant "opens the door" for the prosecution to "rebut the same" claimed character trait by offering contrary evidence. *Wilk* at

¶ 54; Evid.R. 404(A)(1). To demonstrate character, Evid.R. 405(A) allows cross-examination into "relevant specific instances of conduct."

{¶ 48} The State argues that it was proper to cross-examine Hughes about his conduct in Chicago and potential infidelity to rebut the testimony elicited by Hughes that he was a good father. During cross-examination, Hughes's counsel asked State's witness Jezior to "describe to the jury . . . how [Hughes] was as a father. . . ." Jezior testified that Hughes was "the best dad to his son and a great uncle to my kids." Similarly, Hughes's counsel asked defense witness Mother to "tell the jury, what type of father was Traveon to his son." In response, Mother testified that Hughes "was a wonderful father."

{¶ 49} We agree that by eliciting statements that he was a good father, Hughes opened the door to contrary evidence. However, the State introduced rebuttal character evidence that went beyond whether Hughes was a good father. The State did not examine Hughes's relationship with his children or whether Hughes's conduct impacted his children's well-being. Instead, the State asked open-ended questions, like, "What was going on in Chicago?" The State also listed names of half a dozen women, asked if Hughes was "talking" to them, then asked, "So you're not loyal[?]" The State made no attempt to link his questions about Hughes's life in Chicago or potential infidelity to Hughes's performance as a father. As such, the State failed to limit his cross-examination regarding Hughes's character to "relevant specific instances of conduct," as Evid.R. 405(A) requires. The State did not "rebut

the same" "pertinent trait of character" Hughes had attempted to demonstrate, as Evid.R. 404(A)(1) allows.

{¶ 50} Hughes has not met his burden to demonstrate that the outcome of this trial would have been clearly different had the court excluded evidence of Hughes's conduct with other women and possible misconduct in Chicago. There was substantial evidence that Hughes was guilty of endangering the baby, resulting in his death. It is undisputed that Hughes was the only person present when the baby began to struggle breathing, having choked on the wipe. As stated above, Barr examined the baby and testified that he lacked developmental ability to push the wipe down his own throat. The State also corroborated this testimony by introducing video in which the baby's arms hang or reach or flail without direction. Because the outcome of the trial was not clearly affected by evidence of Hughes's activities with other women or in Chicago, the court did not commit plain error.

{¶ 51} Accordingly, Hughes's third assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR