[Cite as *State v. Buchanan*, 2025-Ohio-5348.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                     :

    Plaintiff-Appellee,        :

                                                      No. 114948

    v.                        :

BOBBY BUCHANAN, JR.,               :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 26, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676647-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ben McNair, Assistant Prosecuting Attorney, *for appellee*.

John F. Corrigan, *for appellant*.

LISA B. FORBES, P.J.:

{¶ 1} Bobby Buchanan, Jr. ("Buchanan") appeals, challenging his conviction for aggravated murder and his prison sentences for firearm specifications associated with two felonious-assault convictions. For the following reasons, we affirm.

## I. Facts and Procedural History

### A. Before Trial

{¶ 2} This case involves two shootings that Buchanan carried out. The first occurred on November 10, 2022, involving C.N. and N.H. The second is the December 3, 2022 homicide of Anthony Wynn ("Wynn") at a gas station. Resulting from these events, a grand jury indicted Buchanan on December 13, 2022.

{¶ 3} Related to the first shooting, Buchanan was charged with the following counts pertinent to this appeal. Concerning C.N., Buchanan was charged with Count 9, attempted murder, a first-degree felony, in violation of R.C. 2923.02/2903.02(A); Count 10, felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1); and Count 11, felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2). Concerning N.H., Buchanan was charged with Count 12, felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2). Each of the above charges was accompanied by one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A), respectively.

{¶ 4} Related to the killing of Wynn, Buchanan was charged with the following counts pertinent to this appeal: Count 1, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A); Count 2, murder, an unclassified felony, in violation of R.C. 2903.02(A); Count 3, murder, an unclassified felony, in violation of R.C. 2903.02(B); Count 4, felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1); Count 5, felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2). Each of the above charges related to Wynn's

homicide was accompanied by one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A), respectively.

{¶ 5}  On September 4, 2024, the case proceeded to a bench trial.  The parties elicited the following testimony pertinent to this appeal.[1]

**B. Trial Testimony**

### 1.  C.N.

{¶ 6}  On behalf of the State, C.N. testified that, on November 10, 2022, he and N.H. encountered Buchanan while in the parking lot of a grocery store.[2]  The three exchanged words.  Buchanan then "pulled out a handgun and tried to shoot [C.N.] in the head" before shooting him in the abdomen.

### 2.  Det. Daniel Lentz

{¶ 7}  For the State, Daniel Lentz ("Det. Lentz") testified that he was a detective for the Cleveland Division of Police and that he investigated the December 3, 2022 homicide of Anthony Wynn.  From the gas station where Wynn was shot, Det. Lentz obtained security video, which he authenticated and narrated from the stand.  The video was admitted into evidence.

{¶ 8}  The video shows a black vehicle pull into the gas station.  Det. Lentz identified the man driving the vehicle as Buchanan.  The man identified as

---

[1] Though Buchanan raises assignments of error that relate to both shootings, he challenges only the sufficiency and manifest weight of the evidence that supports the court's finding that he acted "with prior calculation and design" under R.C. 2903.01(A) in killing Wynn.  Our summary of the evidence elicited at trial is limited accordingly.

[2] In the courtroom, C.N. identified Buchanan as his assailant.

Buchanan gets out of car and pumps gas. Seconds later, a white pickup truck pulls into the gas station, which Det. Lentz testified was driven by Wynn. The man identified as Wynn exits his vehicle and begins to pump gas, too.

{¶ 9} Eventually, Buchanan reenters his car and sits in the driver's seat. Det. Lentz noted that, before Buchanan entered the car, his back was facing Wynn. He testified that, at that point, "no conversation appear[ed] to have taken place between the two" men.

{¶ 10} The video shows Buchanan exit his car again and walk behind its rear. Another man exits the front passenger seat of Wynn's car and "walk[s] towards the store," according to Det. Lentz. Wynn's passenger appears to say something to Wynn, before continuing to walk towards the storefront. As this occurs, Buchannan removes the gas nozzle from his car and returns it to the pump. Buchanan then walks partway behind the rear of his car, in the direction of the driver's seat. He changes direction, "jumps behind the gas pump and fires his weapon into Wynn multiple times . . . ." He then "goes back to his vehicle" and drives away.

### 3. Dr. Catherine Cerny-Zuelzer

{¶ 11} For the defense, Catherine Cerny-Zuelzer ("Dr. Cerny-Zuelzer") testified that she was a doctor of psychiatry and that she evaluated Buchanan in September 2023 and July 2024. She believed that Buchanan was experiencing schizophrenia, psychotic disorder, or substance-abuse disorder. Dr. Cerny-Zuelzer testified that Buchanan seemed to be seeing and hearing things that were not actually present. She reviewed Buchanan's prior medical records, which mentioned

that, as early as 2018, he had believed that "implantable devices" were in his ears. According to Dr. Cerny-Zuelzer, Buchanan believed these devices allowed others to listen to his life and could control his emotions.

{¶ 12} Dr. Cerny-Zuelzer testified that Buchanan also suffered from paranoid delusions, which she described as a belief unsupported by evidence that others wanted to harm him. He felt "persecuted by other people" and believed that others "ha[d] it out for him." Regarding the Wynn shooting, Buchanan told Dr. Cerny-Zuelzer that Wynn and his passenger "knew more about me than I could ever know about [them]." She testified that Buchanan believed that Wynn knew his nickname, Ave, even though they had never met. At the time of the shooting, according to Dr. Cerny-Zuelzer, Buchanan was not receiving any psychiatric treatment.

### 4. Buchanan

{¶ 13} In his own defense, Buchanan testified that he had previously been admitted to a hospital because he believed he had "some sort of device" in his ears. He had "pretty consistently complained" about this problem to various medical providers over nine years. Buchanan believed that the devices allowed other people to "live within my life" and listen to things that happened to him. In December 2022, when he shot Wynn, he was not taking any medication or seeing a doctor.

{¶ 14} On the day of the shooting, Buchanan drove to the gas station. While filling his car with gas, he noticed a truck pull into the gas station alongside him. He heard the truck's driver — later identified as Wynn — say to he was going to "get Ave

popped." Buchanan testified that Ave was his nickname and that he believed he was about to be shot. Buchanan drew his firearm and shot Wynn twice.

{¶ 15} On cross-examination, regarding his thoughts prior to shooting Wynn, Buchanan testified as follows:

Q: And you thought about what to do . . ., right?

A: Yep.

Q: And you thought: The thing that I ought to do is shoot him. Fair to say?

A: . . . I don't think I was completely thinking, I was just responding.

. . .

Q: You heard him say something, you thought about it, and you made a choice about what to do next. Fair to say?

A: Yeah. I didn't have anything much more I could do. . . .

{¶ 16} In response to questions from the court, Buchanan testified that he was carrying the gun before the shooting and did not return to his car to get it.

**C. Verdict, Sentencing, and this Appeal**

{¶ 17} On October 16, 2024, the court found Buchanan guilty on all counts except for Count 12, felonious assault of N.H.

{¶ 18} On November 19, 2024, the court held a sentencing hearing.[3] For purposes of sentencing, the court merged Counts 1 through 5, related to the shooting

---

[3] The court sentenced Buchanan to an aggregate prison term of 40 years to life, and credited him with 716 days of jail-time credit. Buchanan does not challenge his sentence on several counts that are not addressed in this opinion and that do not affect our analysis.

of Wynn, and Counts 9 through 11, related to the shooting of C.N.  Concerning these offenses, the State elected to sentence on Counts 1 and 9, which the court did.  The court also sentenced Buchanan to a three-year prison term for the firearm specification associated with Count 1 and Count 9.  Though Counts 4 and 11 had merged, the court sentenced Buchanan to a three-year prison term for the firearm specification associated with each count.  In total, the court sentenced Buchanan to four three-year prison terms for firearm specifications.

{¶ 19} Buchanan appeals, raising the following assignments of error:

1. After finding appellant guilty of aggravated murder in count one (1) the trial court erred in continuing to deliberate and enter guilty findings in the lesser included offenses contained in counts two (2) through five (5).

2. After finding appellant guilty of attempted murder in count nine (9) the trial court erred in continuing to deliberate and enter guilty findings in the lesser included offenses contained in counts ten (10) and eleven (11).

3. Appellant's aggravated murder conviction by prior calculation and design in count one (1) was not supported by legally sufficient evidence as required by state and federal due process.

4. Appellant's aggravated murder conviction by prior calculation and design in count one (1) was against the manifest weight of the evidence.

5. The trial court erred when it sentenced appellant in accordance with *State v. Bollar* as *Bollar* was not applicable and, if applicable, because *Bollar* was wrongly decided.

6. Appellant was prejudiced by ineffective assistance of trial counsel.

## II. Law and Analysis

{¶ 20} For ease of analysis, we address Buchanan's assignments of error together and out of order.

### A. Assignments of Error Nos. 1 and 2 — Convictions for Lesser-Included Offenses

{¶ 21} In his first and second assignments of error, Buchanan asserts that the court erred by convicting him for the felonious assaults of Wynn and C.N. Buchanan notes that felonious assault is a "lesser-included" offense of aggravated murder and attempted murder, for which Buchanan had already been found guilty with regard to Wynn and C.N., respectively.

{¶ 22} In support of these assignments of error, citing *State v. Lash*, 2017-Ohio-4065, ¶ 49 (8th Dist.), Buchanan argues that, after the trial court found him guilty of aggravated murder and attempted murder, it should not have deliberated on lesser-included offenses. Buchanan misstates the court's holding in *Lash*, in which this court found that an attorney did not render *ineffective assistance of counsel* for failure to object to a jury deliberating on lesser-included offenses after returning a guilty verdict on aggravated murder.

{¶ 23} Criminal defendants are routinely found guilty of both an offense and its lesser-included offenses. *See State v. Blackwell*, 2025-Ohio-1451, ¶ 2-7 (8th Dist.) (where defendant shot and killed separate victims on separate dates, defendant was found guilty of aggravated murder, murder, and felonious assault for each shooting); *State v. Hughes*, 2025-Ohio-1730, ¶ 2-4 (8th Dist.) (where defendant asphyxiated his infant son with a wipe, defendant was found guilty of murder, endangering children, and involuntary manslaughter); *State v. Newberry*, 2023-Ohio-3623, ¶ 4, 144-146 (8th Dist.) (where defendant shot one victim to death and killed another through a combination of blunt impact and burning, defendant

was found guilty of aggravated murder, murder, and felonious assault with regard to each victim). Similarly, the court did not err in returning guilty verdicts on attempted murder, regarding C.N., and aggravated murder, regarding Wynn, as well as lesser-included offenses of both crimes.

{¶ 24} The Ohio Supreme Court has recognized that where a defendant's conduct supports a finding of guilt on more than one offense, the court must consider whether the charges are allied offenses such that they merge for sentencing. *State v. Ruff*, 2015-Ohio-995, ¶ 24. The Ohio legislature likewise recognized this concept when it enacted R.C. 2941.25 (addressing whether multiple charges and findings of guilt can, consistent with protection against double jeopardy, be separately sentenced).

{¶ 25} Accordingly, assignments of error Nos. 1 and 2 are overruled.

## B. Assignment of Error No. 5 — Sentencing for Firearm Specifications Related to Convictions for Lesser-Included Offenses

{¶ 26} In his fifth assignment of error, Buchanan asserts that the court erred by sentencing him for firearm specifications related to his convictions for the lesser-included offenses discussed above.

{¶ 27} R.C. 2929.14(B)(1)(g) addresses convictions for gun specifications arising from multiple felony convictions. Where a criminal defendant is convicted of two or more felonies that include aggravated murder, murder, attempted murder, and felonious assault, if the defendant is convicted of a gun specification described under R.C. 2929.14(B)(1)(a) in connection with two or more of the felonies, the

sentencing court "shall impose . . . the prison term specified . . . for each of the two most serious specifications" for which the defendant was convicted. R.C. 2929.14(B)(1)(g). The Ohio Supreme Court has found that an offender can be sentenced on a firearm specification that accompanies a merged count. *State v. Bollar*, 2022-Ohio-4370, ¶ 18-19 (R.C. 2929.14(B)(1)(g) "makes no exception to the application of its provision if one of the underlying felony offenses has been merged.").

{¶ 28} Buchanan argues that, unlike in *Bollar*, he challenges the court's ability to deliberate on lesser-included offenses after finding a criminal defendant guilty of a greater offense. Buchanan argues that *Bollar* does not address that question because the defendant pled guilty to the offenses in question. We disagree. Defendants may be found guilty of both an offense and its lesser-included offenses. Applying *Bollar*, when that happens, even if the offenses merge, a sentence should still be imposed on the two most serious firearm specifications.

{¶ 29} Regarding Buchanan's request that we find *Bollar* was wrongly decided, we note that we do not have authority to review or overturn decisions of the Ohio Supreme Court. *Zakel v. State*, 2022-Ohio-4637, ¶ 7 (8th Dist.).

{¶ 30} Accordingly, assignment of error No. 5 is overruled.

### C. Assignment of Error No. 6 — Ineffective Assistance of Counsel

{¶ 31} Buchanan asserts with his sixth assignment of error that his trial attorney rendered ineffective assistance of counsel for failing to object to Buchanan's convictions for lesser-included offenses and sentencing for the associated firearm

specifications. To establish ineffective assistance of counsel, a defendant must show that his attorney was deficient, i.e., that counsel made errors so serious that they were not functioning as counsel guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must also have prejudiced the defense, meaning that defendant did not receive a fair trial. *Id.* As discussed, the court did not err by finding Buchanan guilty of various lesser-included offenses, finding that merger applied, and, nevertheless, sentencing him for firearm specifications related to those offenses. As such, his trial lawyer's supposed failure to object did not constitute ineffective assistance of counsel.

{¶ 32} Accordingly, assignment of error No. 6 is overruled.

### D. Assignments of Error Nos. 3 and 4 — Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶ 33} In his third and fourth assignments of error, Buchanan asserts that the sufficiency and the manifest weight of the evidence did not support his convictions for aggravated murder.

{¶ 34} Although the terms "sufficiency and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together, while applying distinct standards of review, because they are closely related. *See State v. Perry*, 2018-Ohio-487, ¶ 10 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 35} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *Thompkins* at 386. The relevant

inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 36} When making a sufficiency determination, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at 386. Under a sufficiency challenge, witness credibility is immaterial.

{¶ 37} A defendant who "purposely, and with prior calculation and design, cause[s] the death of another" is guilty of aggravated murder. R.C. 2903.01. Buchanan does not contest that he purposely caused the death of Wynn; instead, he argues that the State did not prove beyond reasonable doubt that he did so with prior calculation and design.

{¶ 38} "Prior calculation and design denotes sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation coupled with circumstances that demonstrate a scheme designed to implement the calculated decision to kill." (Cleaned up.) *State v. Sopko*, 2025-Ohio-3280, ¶ 38 (8th Dist.); *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. "A prolonged period of deliberation is unnecessary, and 'prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes.'" *Id.*, quoting *State v. Coley*, 93 Ohio St.2d 253, 264 (2001).

"There is no bright-line test for determining whether a defendant acted with prior calculation and design, so courts consider the totality of the circumstances in each case." *Id.*, citing *State v. Taylor*, 78 Ohio St.3d 15, 19 (1997). One such factor is "whether the act was 'drawn out' or 'an almost instantaneous eruption of events.'" *Id.*, quoting *id.*, citing *State v. Jenkins*, 48 Ohio App.2d 99, 102 (8th Dist. 1976).

{¶ 39} The State presented sufficient evidence that Buchanan acted with prior calculation and design. First, we find that Buchanan had sufficient time and opportunity to plan the homicide. Wynn was present at the gas station and next to Buchanan for several minutes before the shooting, part of which Buchanan sat alone in the driver's seat of his car.

{¶ 40} Second, we cannot say that Buchanan's actions constituted an almost instantaneous eruption of events as would support only a conviction for simple murder. Before the shooting, in the gas station security video, Wynn's passenger appears to say something to Wynn. Several seconds pass, as the passenger walks away from Wynn towards the storefront. Buchanan begins to move away from Wynn. He walks behind the rear of his car, moving in the direction of his driver's seat. He then changes direction, jumps behind the gas pump, and shoots Wynn twice. Buchanan's reversal of course before shooting Wynn demonstrates prior calculation and design sufficient to support his aggravated-murder conviction. *See State v. Walker*, 2016-Ohio-8295, ¶ 22. ("Pursuing and killing a fleeing or incapacitated victim after an initial confrontation strongly indicates prior

calculation and design.")  Also, on cross-examination, Buchanan agreed that, before shooting Wynn, he thought about what to do and made a choice to shoot.

{¶ 41} In contrast to sufficiency, a manifest-weight-of-the-evidence challenge "addresses the evidence's effect of inducing belief," i.e., "whose evidence is more persuasive — the state's or the defendant's?"  *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386-387.  When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the Ohio Supreme Court recently explained that "[the] court looks at the entire record and '"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'"  *State v. Brown*, 2025-Ohio-2804, ¶ 30, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 42} At trial, the finder of fact is in the "best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony."  *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.).  Reversal on manifest-weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins* at 387, quoting *Martin* at 175.

{¶ 43} Based on our review of the record, we find the evidence does not weigh heavily against a conviction such that the court clearly lost its way and created

a manifest miscarriage of justice by finding Buchanan guilty of aggravated murder. As discussed above, the gas station security video contradicts Buchanan's testimony that, when he shot Wynn, he was not thinking and "just responding" to Wynn's purported verbal threat. Several seconds pass between the apparent conversation between Wynn and his passenger and the shooting. During this time, Buchanan starts to walk away from Wynn. Rather than proceed to get in his car and drive away, Buchanan turns around, moves towards Wynn, and shoots him twice. Further, although Dr. Cerny-Zuelzer concluded that Buchanan suffered from hallucinations and paranoid delusions, she did not testify that Buchanan lacked the cognitive ability to preconceive a plan.

{¶ 44} Accordingly, appellant's third and fourth assignments of error are overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of
Appeals.)